```
┌─────────────────────────────────────────┐
│ USDC SDNY                                │
│ DOCUMENT                                 │
│ ELECTRONICALLY FILED                     │
│ DOC #: _____                  │
│ DATE FILED: 10/20/2016                   │
└─────────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                      :

ILENE CAIN,                :
                      :

            Plaintiff,    :        1:16-cv-170-GHW
                      :

       -v -           :      MEMORANDUM OPINION
                      :        AND ORDER

CHRISTINE VALMY INTERNATIONAL  :
SCHOOL OF ESTHETICS, SKIN CARE, AND  :
MAKEUP, MORINA VALMY, KAROL ROSS,  :
                      :
           Defendants.  :
                      :
------------------------------------------------------------ X

GREGORY H. WOODS, District Judge:

## I.    INTRODUCTION

       Plaintiff Ileen Cain, proceeding *pro se*, was a student at Christine Valmy Inc. ("CVI"), a for-profit vocational school that offers classes in, among other things, skin care, cosmetology, hairstyling, makeup, nail artistry, waxing, and spa treatments.  Plaintiff alleges that, while attending CVI, she was the victim of recurring harassment and false accusations of misconduct by students and staff, all of which created a hostile environment at the school and ultimately caused Plaintiff to abandon her studies there.  Plaintiff brings this action against CVI, CVI's president and owner Morina Valmy, and CVI instructor Karol Ross, asserting claims for violations of her federal constitutional rights under 42 U.S.C. § 1983, claims of cyberstalking under federal law, and various state law claims.  Since Defendants are not state actors, Plaintiff's constitutional claims under § 1983 must be dismissed with prejudice, and because the statutes relied upon by Plaintiff for her cyberstalking claims do not supply a private right of action, those claims must also be dismissed with prejudice.  In light of the dismissal of all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims will be dismissed without

prejudice.

## II.    BACKGROUND[1]

Plaintiff began taking courses at CVI in June 2014.  Amended Complaint ("AC"), Dkt. No. 21, at 16.  Prior to beginning her studies at CVI, Plaintiff had a meeting with Morina Valmy, the president and owner of CVI during which Plaintiff "confided" to Ms. Valmy that she "is a victim of cyberstalking and that she was terminated from two different schools after complaining to school administrators, [that] students were participating in cyberstalking."  *Id.* at 13, ¶ 2.  Ms. Valmy assured Plaintiff that, if "the cyberstalking followed her to [CVI]," Ms. Valmy would "investigate the situation."  *Id.* at 14, ¶ 5.

Plaintiff alleges that one day after starting courses at CVI, students "began the rant, gang mock her kook her kook her kook kook her."  *Id.* at 14, ¶ 8.  "The rant was consistent throughout . . . esthetic theory class," and the instructor of that class, Ms. Ross, "did nothing to stop the rant."  *Id.*

Plaintiff also alleges that she was called to Ms. Valmy's office multiple times during the course of her studies and confronted with allegations of inappropriate conduct.  On one occasion, Plaintiff "was chastised and accused of making ethnic comments while talking on her phone" and was "advised . . . to stay off her phone."  *Id.* at 10, ¶¶ 1-2.  Subsequently, Plaintiff was called to Ms. Valmy's office "about an alleged video of Plaintiff sticking her middle finger up."  *Id.* at 10, ¶ 4.  At this meeting, both Ms. Valmy and Ms. Ross "badgered [her] relentlessly about the alleged video" but they "did not produce any video of Plaintiff . . . sticking her middle finger up."  *Id.* at 10, ¶¶ 4-5. Before one meeting in Ms. Valmy's office, Ms. Ross told Plaintiff that the school was "thinking of

---

[1]    At the motion to dismiss stage, the allegations in the complaint are accepted as true and all reasonable inferences are drawn in Plaintiff's favor.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

terminating [Plaintiff] from the program, and that this is a serious matter." *Id.* at 11, ¶ 6.  On

another occasion, Plaintiff was called to Ms. Valmy's office "for allegedly pushing a student." *Id.* at

11, ¶¶ 8-9.  Similarly, Plaintiff was called to Ms. Valmy's office a final time "for allegedly using the F

word." *Id.* at 11, ¶ 13.

Although it is not clear when, Plaintiff alleges that Ms. Ross also told Plaintiff that she "has

heard a lot of chatter in the hallway pertaining to Plaintiff," and told Plaintiff that "she was

concerned about Plaintiff moving on to the second phase of the program, esthetic lab where

students would be required to apply chemical product on students." *Id.* at 11, ¶ 14.  Ms. Ross

allegedly told Plaintiff that she was concerned that Plaintiff "could be sabotaged." *Id.* at 15, ¶ 11.

Plaintiff alleges that, although she "was humiliated and emotionally wrecked" at this point, she

decided to begin the lab portion of the course. *Id.* at 15, ¶ 14.

Plaintiff alleges that during the first week of esthetic lab courses, "the rant kook coo coo

kook her kook her coo coo" began again. *Id.* at 15, ¶ 15.  Apparently during the course of esthetic

lab instruction, a receptionist at the school named Gabriella was "yelling at the top of her lungs keep

coo coo kooking her keep kook kook kooing her." *Id.* at 15, ¶ 16.  Specifically, Gabriella was

"holding the sides of her skirt dancing from side to side" and saying "keep mocking her keep kook

kook koocking her." *Id.* at 16, ¶ 17.

At some point in time, Plaintiff told Ms. Valmy that "the cyberstalking had followed her" to

CVI, as had the "consistent and insistent rant of referring to Plaintiff as a kook, coo coo cooc coo

coo coo coo." *Id.* at 12, ¶ 17.  On July 9, 2015, Ms. Valmy addressed Plaintiff's class "regarding

alleged complaints students had made against Plaintiff." *Id.* at 11, ¶ 15.  Ms. Valmy "instructed the

class to tell Plaintiff . . . what they wanted to say about her." *Id.* at 12, ¶ 19.  One student stated that

Plaintiff had "told her she stinks." *Id.* at 12, ¶ 21.  While Ms. Valmy was speaking to the class,

"Plaintiff sat with her head down and did not say a word." *Id.* at 12, ¶ 23.  The discussion eventually

became "emotionally unbearable" for Plaintiff and she decided to leave the class. *Id.* at 12, ¶ 24. As Plaintiff left the room, "the entire class roared in laughter." *Id.* at 12, ¶ 25.

On July 10, 2015, Plaintiff filed a complaint with the Bureau of Proprietary School Supervision ("BPSS"). *Id.* at 17, ¶ 1. On July 24, 2015, Plaintiff requested a leave of absence from CVI. *Id.* at 17. On August 8, 2015, "BPSS concluded it could not substantiate any violations" stated by Plaintiff and "closed Plaintiff's case." *Id.* at 18, ¶ 6. Plaintiff appealed this decision, but "BPSS refused to reverse their decision." *Id.* Plaintiff withdrew from CVI on October 13, 2015. *Id.* at 16.

Plaintiff filed this lawsuit on January 7, 2016. Construed as raising the strongest claims it suggests, the complaint arguably asserts claims for violation of her federal constitutional rights under 42 U.S.C. § 1983, claims for cyberstalking under federal law, and a host of state law claims, including claims under the New York City Human Rights law and claims for defamation and slander. *Id.* at 1. Defendants moved to dismiss Plaintiff's complaint on May 12, 2016. Dkt. No. 17. Plaintiff filed an Amended Complaint on June 16, 2016, Dkt. No. 21, which Defendants moved to dismiss on July 7, 2016, Dkt. No. 23.

## III.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). Legal

conclusions, unlike facts, are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 679. A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Furthermore, "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Courts are to "liberally construe pleadings and briefs submitted by *pro se* litigants . . . reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007).

## IV.   DISCUSSION

### A.   Claims Under 42 U.S.C. § 1983

Plaintiff's papers indicate that she intends to bring claims under 42 U.S.C. § 1983 for violation of her federal constitutional rights. Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. and Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) (internal quotation marks omitted)). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).

"For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled'

by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Plaintiff's complaint fails under all three tests. First, even under a liberal reading of the complaint, Plaintiff has not pleaded any facts tending to show that CVI was compelled or controlled by the state, and thus fails to allege that Defendants are state actors under the "compulsion test." Next, Plaintiff's complaint may be read to allege that education is a public function and that Defendants are state actors under the "public function test." *See* AC at 19 ("Living and breathing are gods [sic] givens. The right to an education, and benefit from that education is Americas [sic] given."). However, the Supreme Court has made clear that just because "a private entity performs a function which serves the public does not make its acts state action." *Rendell-Baker*, 457 U.S. at 842. Rather, the "relevant question is not simply whether a private group is serving a 'public function' . . . [but] whether the function has been traditionally the *exclusive* prerogative of the State." *Id.* (citation omitted) (emphasis in original). In *Rendell-Baker*, the "education of maladjusted high school students" was recognized to be a "public function," but the Supreme Court held that these services were not "the exclusive province of the State." *Id.* Applying the Supreme Court's analysis in *Rendell-Baker*, courts have recognized that "[d]espite the importance of public education in American society, education is not considered to be exclusively the prerogative of the State." *Hamlin ex rel. Hamlin v. City of Peekskill Bd. of Educ.*, 377 F. Supp. 2d 379, 386 (S.D.N.Y. 2005) (collecting cases). The vocational courses offered by CVI are certainly are no more the "exclusive prerogative

of the State" than the educational services at issue in *Rendell-Baker*, and Plaintiff makes no argument to the contrary.

Finally, the Court concludes that Plaintiff has failed to allege state action under the "close nexus" test. Plaintiff alleges that CVI is a "recipient[ ] of both federal and state funds and [is] licensed by the State." AC page 7, ¶ 5. However, neither the receipt of funding from the state nor licensure by the state are sufficient to transform the actions of a private entity into "state action" for purposes of a lawsuit under § 1983. The Second Circuit has explained that although a state may be involved in the "creation, funding, licensing, [and] regulation" of a given industry, "that fact alone is insufficient to support a finding of state action." *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 268 (2d Cir. 2014). In *Grogan*, the court of appeals recognized that the defendant "derive[d] the vast majority of its funding from public sources" but concluded that, as a matter of law, the government was not "sufficiently entwined with [Defendant's] management as to render" the challenged conduct "state action." *Id.* at 269. In particular, the plaintiff had not shown that the state "played any role" in the decision that she was challenging. *Id.* The Court observes that in *Rendell-Baker*, even though the defendant "depended on the State for funds," the Court held that since there was no "symbiotic relationship" between the state and defendant, the "school's fiscal relationship with the State" did not make the school a state actor. *Rendell-Baker*, 457 U.S. at 840, 843. Furthermore, the fact that the state has issued a license to a private business is insufficient to establish state action. *Hollander v. Copacabna Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010).

Because Plaintiff has not alleged that the actions of the Defendants are "fairly attributable" to the state, and constitutional claims under § 1983 may not be brought against a private actor, Plaintiff's constitutional claims must be dismissed.

### B. Cyberstalking

Plaintiffs' papers are replete with references to "cyberstalking," although the Court observes

the absence of factual allegations which could reasonably support such a claim. Plaintiff appears to rely on 47 U.S.C. § 223(h)(1), *see* AC at 9, ¶ 2, but this provision is simply a definitional section in the Communications Decency Act. The Court therefore reads Plaintiff's as raising a claim for violation of the Communications Decency Act's prescription against harassing telecommunications. *See* 47 U.S.C. § 223(a). Liberally construing the complaint, Plaintiff may also intend to assert a claim under 18 U.S.C. § 2261A, a federal stalking statute. As explained below, however, claims under both statutes must fail inasmuch as they are criminal statutes which supply no private right of action.

"[I]n our federal system crimes are always prosecuted by the Federal Government, not . . . by private complaints." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972); *accord Hill v. Didio*, 191 F. App'x. 13, 14-15 (2d Cir. 2006) ("[W]e have long recognized that crimes are prosecuted by the government, not by private parties."). "In *Cort v. Ash*, . . . the Supreme Court established a four-factor test to determine whether a federal statute creates an implied right of action: (1) whether the statute was enacted to benefit a special class; (2) whether the drafters intended to create a private right of action; (3) whether a private right of action would be consistent with the purposes of the statute; and (4) whether the cause of action is one not traditionally relegated to the states." *Cty. of Westchester v. New York*, 286 F.3d 150, 152 (2d Cir. 2002) (quoting *Cort v. Ash*, 422 U.S. 66 (1975) (internal citation and quotation marks omitted)). "The Court thereafter instructed that the second factor—Congressional intent—is 'dispositive.'" *Id.* (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 23-24 (1979)). *Cort* itself, moreover, involved a private litigant's claim for damages for violation of a criminal statute, much like Plaintiff's lawsuit against CVI.

Case law is unanimous that a private right of action is not available under the Communications Decency Act. *See Fox v. Eyring*, No. 2:09-cv-180 (TS), 2009 WL 675355, at *3 (D. Utah Mar. 12, 2009) ("47 U.S.C. § 223 is a criminal statute, and provides no private right of

action."); *Sloan v. Trung*, 573 F. Supp. 2d 823, 829 (S.D.N.Y. 2008) ("[T]he Communications

Decency Act . . . is a criminal statute that prohibits the making of obscene or harassing

telecommunications, but creates no private right of action.") (citation and internal quotation marks

omitted); *Croteau v. California*, No. 07-cv-588 (IEG) (AJB), 2007 WL 4180831, at *7 (S.D. Cal. Nov.

21, 2007) ("In attempted civil cases under [the Communications Decency Act], courts have refused

to imply a private right of action."); *Viola v. A&E Television Networks*, 433 F. Supp. 2d 613, 618

(W.D. Pa. 2006) ("[T]he authority to enforce the [Communications Decency Act] lies with the

proper government authorities and not with a private citizen such as plaintiff."); *Jensen v. Shrively*, No.

C 02-03143 (CRB), 2003 WL 917969, at *1 (N.D. Cal. Feb. 25, 2003) (the Communications Decency

Act is "a statute which provides for criminal penalties but does not provide a private right of

action"); *Ghartey v. Chrysler Credit Corp.*, No. 92-cv-1782 (CPS), 1992 WL 373479, at *5 (E.D.N.Y.

Nov. 23, 1993) ("The Federal Communications Act does not expressly provide for a private right of

action to recover damages for violations of section 223, and no such remedy can be implied under

the act.").

  Case law is also unanimous that no private right of action is available under § 2261A.  *See*

*Rock v. BAE Sys., Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014) ("[H]aving carefully reviewed § 2261A,

we cannot find anything in its plain language to indicate that it is more than a bare criminal

statute . . . In short, there is no basis from which we can or should infer a private right of action."

(citation and internal quotation marks omitted)); *Cain v. Rambert*, No. 13-cv-5807 (MKB), 2014 WL

2440596, at *10, n.9 (E.D.N.Y. May 30, 2014) ("[T]here is no private right of action to enforce this

criminal statute, which, as a general matter, is prosecuted by the government and not by private

individuals."); *Hopson v. Commonwealth Attorney's Office*, No. 3:12-cv-744-M, 2013 WL 1411234, at *3

(W.D. Ky. Apr. 8, 2013) ("It is clear that § 2261A does not provide for a private right of action or

civil remedies."); *Jacobus v. Huerta*, No. 3:12–cv–02032, 2013 WL 673233, at *12 (S.D. W. Va. Feb.

22, 2013) ("[N]othing in 18 U.S.C. § 2261A suggests that it is more than a 'bare criminal statute' . . . . Therefore, [plaintiff] has no cause of action under 18 U.S.C. § 2261A."), *adopted by*, 2013 WL 1723631 (S.D. W. Va. Apr. 22, 2013); *Dorr v. Ford Motor Co.*, No. 10–cv–13822, 2011 WL 5857886, at *9 (E.D. Mich. Sept. 27, 2011) ("Absent a criminal statute specifically providing for a private right of action—which [§ 2261A] do[es] not—'Only the United States, through a federal Grand Jury or a United States Attorney, has the authority to file a complaint against individuals for violation of criminal statute.'") (citation omitted), *adopted by*, 2011 WL 5838582 (E.D. Mich. Nov. 21, 2011); *Fox v. Tippetts*, No. 09-cv-00485, 2009 WL 3790173, at *4 (W.D. La. Nov. 10, 2009) ("Nothing in § 2261A indicates that it is more than a 'bare criminal statute.' . . . Thus, the statute[] do[es] not provide for a private right of action."); *Kruska v. Perverted Justice Foundation, Inc.*, No. 08-cv-0054 (PHX) (SMM), 2009 WL 321146, at *4 (D. Ariz. Feb. 6, 2009) ("The act creates no private right of recovery.").

Moreover, applying *Cort* and its progeny, the Court independently concludes that the Communications Decency Act and 18 U.S.C. § 2261A are bare criminal statutes which suggest no Congressional intent to provide a private right of action. Nor does Plaintiff point to any language in the statute or any related source which would permit the Court to infer such intent. "In light of the presumption against implying such remedies from criminal statutes," *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000), the Court declines to imply such a remedy under the statutes at issue here. Accordingly, because neither 47 U.S.C. § 223(a) nor 18 U.S.C. § 2261A provide a private right of action, Plaintiff's "cyberstalking" claims must be dismissed.

### C.  State Law Claims

Under 28 U.S.C. § 1367(c)(3), the exercise of supplemental jurisdiction over Plaintiff's remaining state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." The Second Circuit counsels against exercising supplemental jurisdiction

in such a situation: "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).

Having dismissed all of Plaintiff's claims that were based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, those claims are dismissed without prejudice.

### D.  Leave to Amend

"Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). As discussed, Plaintiff has failed to allege state action as required to state a claim under § 1983. Since this "problem with [Plaintiff's] causes of action" under § 1983 is "substantive" and "better pleading will not cure it," the Court denies Plaintiff leave to amend with respect to her claims under § 1983. *Cuoco v. Mortisugu*, 222 F.3d 99, 112 (2d Cir. 2000); *cf. Scalpi v. Town of East Fishkill*, No. 14-cv-2126 (KMK), 2016 WL 858925, at *5, n.8 (S.D.N.Y. Feb. 29, 2016) (leave to amend denied as futile where it was "clear from the Amended Complaint that Plaintiff does not have any possibility of asserting a plausible § 1983 claim because [Defendant] cannot be deemed a state actor."); *Wilson v. Wilson-Polon*, No. 09-cv-9810 (PGG), 2010 WL 3733935, at *10 (S.D.N.Y. Sept. 23, 2010) (leave to amend denied as futile where defendant was "a private citizen who does not meet § 1983's state action requirement"). Leave to amend with respect to Plaintiff's federal claims under § 1983 is therefore denied. Similarly, because the statutes on which Plaintiff relies for her cyberstalking claims "lack . . . a private right of action, better pleading will not cure the defect, and granting leave to amend would be futile." *Jordan v. Chase*

*Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (citation and internal quotation marks omitted); *see also Howard v. Mun. Credit Union*, 2008 WL 782760, at *8 (S.D.N.Y. Mar. 25, 2008) (dismissing without leave to amend when the relevant statutory provision "simply affords no private right of action, and any amendment would therefore be futile"). Thus, leave to amend with respect to Plaintiff's cyberstalking claims is also denied.

## V.    CONCLUSION

Plaintiff's federal constitutional and cyberstalking claims are dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and leave to replead those claims is denied. Accordingly, Plaintiff's federal claims under 42 U.S.C. § 1983 and for cyberstalking are DISMISSED WITH PREJUDICE. Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and they are DISMISSED WITHOUT PREJUDICE.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 23 and to close this case. The Clerk of Court is further directed to mail a copy of this order to Plaintiff Ileen Cain by certified mail, along with copies of the unpublished decisions cited herein.

SO ORDERED.

Dated:  October 20, 2016
New York, New York

_____
GREGORY N. WOODS
United States District Judge